IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENTT SHERWOOD, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:11-40 |
| | ) | Judge Cercone |
| JEFFREY A. BEARD, Secretary of the Department | ) | Magistrate Judge Kelly |
| of Corrections, et al., | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss the Amended Complaint filed

on behalf of the Defendants (ECF No. 52) be granted with respect to Counts II, III, V and VII

and denied with respect to Counts I, IV and VI.  It is further recommended that this case be

stayed pending resolution of Plaintiff's post-conviction collateral petition.

### II.     REPORT

Plaintiff, Brentt Sherwood, a capital case prisoner incarcerated at the State Correctional

Institution at Greene, Pennsylvania ("SCI-Greene"), brings this civil rights action pursuant to 42

U.S.C. § 1983, alleging that Defendants lost and/or destroyed boxes of his legal materials and

that they did so in retaliation for his having filed grievances against them.  He raises claims of

denial of access to courts, retaliation, due process, conspiracy and illegal seizure under the First,

Fourth and Fourteen Amendments to the Constitution and the corresponding provisions of the

Pennsylvania constitution against the defendants: Jeffrey A. Beard, Secretary of the

Pennsylvania Department of Corrections ("DOC"); Louis S. Folino, Superintendent of SCI-

Greene; Captain Paul Walker; Capital Case Unit Manager Peter Vidonish; Lieutenant Shrader;

Lieutenant Bupka; Lieutenant Robert Kennedy; Grievance Coordinator Dan Davis; Craig Haywood, Captain of the Department of Security at SCI-Greene; and Correctional Officers (C.O.s) Wendell, Orndoff and R. Smith.

Currently pending for disposition is Defendant's Motion to Dismiss the Amended Complaint. For the reasons that follow, the motion should be granted with respect to Counts II, III, V and VII and denied with respect to Counts I, IV and VI. Furthermore, this case should be stayed pending resolution of Plaintiff's post-conviction collateral petition.

### A. FACTS

Plaintiff contends that on April 19, 2010, he was transported from SCI-Greene's L-Unit to the F-Unit and placed in the Restrictive Housing Unit (RHU) based on "false misconduct charges." (Am. Compl. ¶ 2.)[1] All of his property, which included an "additional box of legal property," was left behind on L-Unit. On April 25, 2010, Plaintiff inventoried his property with C.O.s Wilcher and Martin when he noticed that the one box of legal property was missing (Am. Compl. ¶ 3). Wilcher and Martin then repacked Plaintiff's property into a footlocker and four boxes, instead of the three boxes he had originally packed. Plaintiff contends that one of his legal boxes was confiscated by Wilcher and Martin on Captain Walker's orders in contravention of DOC policy (Am. Compl. ¶¶ 4-6 & Exs. 19, 20). Despite Plaintiff's efforts, Wilcher and Martin would not allow Plaintiff to pack away this box or send it through the mail to his family although this is permitted under DOC policy and despite the fact that he had a valid exemption to keep an additional box of legal property (Am. Compl. ¶ 6 & Ex. A4, Discovery Ex. I). He even voluntarily destroyed his desk lamp to make room for his legal property. (Am. Compl. ¶ 6 & Discovery Ex. II.) Wilcher confiscated the box and gave Plaintiff a DC-154A confiscation slip

---

[1] ECF No. 50.

for it.  (Am. Compl. Ex. 1.)

Plaintiff sent a DC-135A Request to Staff Form to Captain Walker on April 26, 2010 explaining the situation concerning the confiscated box.  According to Plaintiff, Walker ignored this request. Plaintiff sent another DC-135A to Captain Walker, whereupon he received a reply from Lieutenant Shrader on May 3, 2010.  Shrader stated that the Superintendent was the person who could grant a capital inmate an extra box of legal property in his cell (Am. Compl. ¶ 7 & Exs. 2, 3). Plaintiff wrote to Superintendent Folino on May 4, 2010 and again on May 10, 2010 concerning the box of legal property.  Folino responded informing Plaintiff to take the matter up with Captain Walker (Am. Compl. ¶ 8 & Exs. 4, 5).  Plaintiff asserts that, pursuant to DOC policy, Superintendent Folino was obligated to respond to and resolve this dilemma.  (Am. Compl. Discovery Ex. III.)

Plaintiff sent a request to slip to Captain Walker on May 18, 2010.  Captain Walker forwarded the slip onto a Ms. Shawley.  Plaintiff then filed a grievance to which Lieutenant Shrader responded (Am. Compl. ¶ 9 & Exs. 6, B1-B5).  Plaintiff argues that Grievance Coordinator Dan Davis's appointment of Shrader to investigate the legal property box issue was in violation of DOC regulations because Shrader was involved in the dispute.  Neither Grievance Coordinator Davis nor Superintendent Folino rectified this situation (Am. Compl. ¶ 10 & Ex. 17, Ex. 26 at 6 section (e)).  On June 20, 2010, Plaintiff sent a request slip to Unit Manager Peter Vidonish informing him that he needed an exemption to the policy concerning the number of legal boxes a capital inmate was permitted to have in his cell as well as the claim that Plaintiff still had a box of legal property in the L-Unit storage room which was left behind when he was put in F-Unit (Am. Compl. ¶ 11 & Exs. 7, 18).  Unit Manager Vidonish stated that exemptions no longer exist, but in response to another grievance Lieutenant Bupka stated that exemptions

exist but Plaintiff was ineligible for one. Plaintiff contends that this inconsistency shows that Vidonish was retaliating against him for filing grievances (Am. Compl. ¶ 12 & Ex. E1). He submits that he did have an exemption for an extra box of legal materials. (Am. Compl. Exs. A4, 28.)

On June 22, 2010, C.O.s Shrader and Wendell informed Plaintiff that he was over the property limit in his cell. Plaintiff argued to no avail that he had been granted an exemption and he needed the boxes for his post-conviction criminal proceedings (Am. Compl. ¶¶ 13-15 & Ex. A4). Plaintiff offered to get rid of a full box in one of various ways. Shrader did not permit Plaintiff to rid himself of the box in any of those ways. Plaintiff submits that the box contained an affidavit from his grandfather which cannot be replaced because he died on June 12, 2010. (Am. Compl. ¶ 16 & Ex. 27.) Plaintiff asserts that Lieutenant Shrader falsely told him that SCI-Greene did not have a legal storage room, when DOC policy clearly states that all capital case prisoners can store their legal materials in the Property Storage Room. (Am. Compl. Exs. 19, 20.) Plaintiff contends that C.O. Wendell knew what Lieutenant Shrader was doing was wrong and he failed to correct the situation (Am. Compl. ¶¶ 16-17 & Ex. 17).

Plaintiff filed a grievance. Lieutenant Robert Kennedy replied that since the Pennsylvania Supreme Court had affirmed Plaintiff's conviction, his case was no longer active and Plaintiff should follow a certain procedure to access his legal property (Am. Compl. ¶ 18 & Ex. A1). In another grievance he filed with Kennedy, Plaintiff claims that Kennedy contradicted himself as well as Shrader, Bupka, Vidonish, and Walker when he replied that Plaintiff was not entitled to an exemption. As a result, Kennedy denied Plaintiff rightful access to his legal materials. Plaintiff contends that this constituted an illegal seizure of his property (Am. Compl. ¶¶ 19-22 & Exs. A1, F1, 19, 20).

Plaintiff asserts that Bupka's responses to his grievances (that he did not have approval for any stored legal property) were false and the only reason Bupka rejected them was in retaliation for Plaintiff's having filed earlier grievances (Am. Compl. ¶¶ 23-24 & Exs. D1, E1, Discovery Ex. IV, 23-25). Beard, Folino, Vidonish, Kennedy, and Walker made no attempt to correct the above-listed improprieties through their responses to Plaintiff's grievances (Am. Compl. ¶¶ 25-27 & Exs. B to B5, C to C8, D to D5, E to E5, F to F5). Plaintiff generally claims that he was retaliated against for filing grievances, ultimately leading to the destruction of one of his boxes. Moreover, Defendants did not permit him to rid himself of excess property in accordance with DOC policies (Am. Compl. ¶ 28). Vidonish told him there were no more legal box exemptions, even though the Chief Grievance Officer had awarded him one. (Am. Compl. ¶ 29 & Exs. A to A4, 18.) Plaintiff avers that this constituted retaliation by Vidonish for his having received the exemption. (Am. Compl. ¶ 30.)

On June 24, 2010, Plaintiff discovered that one of his legal boxes was missing from the L-Unit Property Storage Room. Plaintiff informed two C.O.s, who informed Vidonish, who took no action. Plaintiff sent a request slip to Vidonish. (Am. Compl. ¶¶ 31-32 & Ex. 18.) C.O.s Feather and Orndoff had packed Plaintiff's property. As property officer, it was Orndoff's responsibility to make sure that the one missing box was included in the property (Am. Compl. ¶¶ 33-34 & Discovery Ex. V). Plaintiff further contends that Orndoff incorrectly portrayed that Plaintiff had more property (9 boxes) than he actually did (3 boxes) (Am. Compl. ¶¶ 37-40 & Ex. 1, Discovery Exs. II, VI, VII). Plaintiff contends that, on April 25, 2011, C.O. R. Smith destroyed his property box, without offering him the option of mailing the material to his family or attorney, and that he did so in retaliation for filing grievances (Am. Compl. ¶¶ 41-43 & Discovery Exs. I, III, VIII, IX). Plaintiff contends that Captain Haywood violated his rights by

not training C.O. Smith (Am. Compl. ¶ 44 & Ex. 1, Discovery Ex. VI).

Plaintiff alleges that the destruction of a box of his legal materials has "impeded and prevented" him from litigating his Post-Conviction Relief Act ("PCRA") petition in state court (Am. Compl. ¶¶ 46-60, 76-80 & Attachment B). He indicates that his right to self-representation was precluded. (Am. Compl. ¶ 48; Sherwood Aff. ¶ 5.[2]) As noted above, he contends that the box contained an affidavit from his now-deceased grandfather, who would have been a character witness for him and would have testified at his trial that he witnessed three incidents of physical abuse of Plaintiff by his step-father. Plaintiff asserts that trial counsel knew of the existence of this evidence and thus the affidavit provides proof of counsel's ineffectiveness. (Am Compl. ¶¶ 53-56; see Sherwood Aff. ¶¶ 4-8.)

In addition to the affidavit from his grandfather, Plaintiff states that the confiscated box contained: various legal research materials, case law authorities and research notes pertaining to his criminal appeals, letters to and from his trial and direct appeal counsels and portions of his discovery, including autopsy reports and numerous medical records and documents. He also states that the box missing from L-Unit legal-only storage room contained: portions of his trial transcripts, portions of the voir dire transcripts, pretrial hearing transcripts and legal research notes and case law authorities. (Sherwood Aff. ¶ 9.) He also wanted to present the claim that his first trial counsel, who filed a number of unnecessary continuances, denied him his right to a speedy trial, but he cannot pursue this claim because the original documents he sent counsel and the responses he received were in the box of legal materials that was confiscated or destroyed. (Am. Compl. ¶¶ 50-52.)

---

[2] ECF No. 50-38.

Plaintiff states that capital case prisoner Arthur Bomar conveyed to him that he had at least one excess box of legal property stored in the legal storage room on G-Unit (thus contradicting what Shrader had said) (Sherwood Aff. ¶ 10); that capital case prisoner Leroy Frears told him that Captain Walker was forced to resign because of another incident in which he destroyed legal property of another capital case prisoner (Sherwood Aff. ¶ 12); that on April 11, 2011, C.O. Smith came to his unit and asked if there was any way to resolve this matter of the confiscated box of legal materials, but Plaintiff told him he had already filed a civil action (Sherwood Aff. ¶ 14); and that on May 15, 2011, Leroy Frears and Plaintiff were studying in the L-Unit mini law library when a C.O. entered and Frears reminded him about their conversation regarding Walker and the C.O. agreed to submit an affidavit in support of Plaintiff's case. (Sherwood Aff. ¶¶ 15-16).

## B. PROCEDURAL HISTORY

Plaintiff filed this action on January 11, 2011 (ECF No. 1). On June 21, 2011, Defendants filed a Motion to Dismiss (ECF No. 17). In response, Plaintiff filed a "Motion Requesting Attachment of Affidavits to Complaint" (ECF No. 21). On July 15, 2011, the Court entered an order denying this motion and directing Plaintiff to file a single amended complaint setting forth all allegations and containing all supporting documents (ECF No. 23). An Amended Complaint was filed on August 8, 2011 (ECF No. 25). However, a dispute then arose as to the identification of two "John Doe Defendants" which took some time to resolve. On February 13, 2012, Plaintiff filed his "Operative Amended Complaint" (ECF No. 50).

Count I alleges a denial of his First Amendment right of access to the courts and the corresponding provisions of the Pennsylvania constitution. Count II alleges that Defendants exhibited "deliberate indifference" to this right in violation of the First, Eighth and Fourteenth

Amendments and the corresponding provisions of the Pennsylvania constitution. Count III alleges a denial of his right to due process regarding the loss and destruction of his legal material under the First, Eighth and Fourteenth Amendments and the corresponding provisions of the Pennsylvania constitution. Count IV alleges retaliation in violation of his rights under the First, Eighth and Fourteenth Amendments and the corresponding provisions of the Pennsylvania constitution. Count V alleges a conspiracy in violation of his rights under the First, Eighth and Fourteenth Amendments and the corresponding provisions of the Pennsylvania constitution. Count VI alleges a failure to train subordinates in violation of his rights under the Eighth and Fourteenth Amendments and the corresponding provisions of the Pennsylvania constitution. Count VII alleges an illegal seizure in violation of his rights under the Fourth, Eighth and Fourteenth Amendments and the corresponding provisions of the Pennsylvania constitution.

On February 27, 2012, a Motion to Dismiss the Amended Complaint was filed by the Defendants (ECF No. 52) and on April 2, 2012, Plaintiff filed his response and brief in support thereof (ECF Nos. 57, 58).

## C. STANDARD OF REVIEW

The United States Supreme Court issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a

plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). A mere "possibility" of misconduct is insufficient. Id. at 679. District courts are required to engage in a two part inquiry:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions…. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show the plaintiff has a "plausible claim for relief." … In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

"Although a district court may not consider matters extraneous to the pleadings, 'a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). "Courts ruling on Rule 12(b)(6) motions may take judicial notice of public records." Anspach ex rel. Anspach v. City of Phila., 503 F.3d 256, 273 n.11 (3d Cir. 2007). Thus, the documents Plaintiff has attached to the Amended Complaint and the public records Defendants have attached to the Motion to Dismiss may be considered without converting the motion into one for summary judgment.

Defendants argue that: 1) Plaintiff cannot state a claim for denial of access to the courts because he has been actively litigating his post-conviction collateral petition in the Court of Common Pleas of Northumberland County and he will be able to pursue his habeas case in the

Middle District of Pennsylvania once he has exhausted his state court remedies; 2) he cannot state a claim for denial of his right to due process as he had available to him and in fact utilized the grievance procedure in the prison to address his claim; 3) he cannot state a claim for retaliation by merely stating that Defendants retaliated against him for filing grievances by destroying his legal materials; 4) he cannot state a claim for conspiracy by just saying there was one; 5) he alleges no personal involvement by many of the Defendants or refers only to their role in reviewing grievances; 6) he cannot state a Fourth Amendment claim because the Fourth Amendment does not apply to prison cells; and 7) the Eleventh Amendment bars his claims for monetary damages against Defendants in their official capacities.

### D. DISCUSSION

#### 1. Section 1983 Claims

It is provided in 42 U.S.C. § 1983 that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

The Supreme Court has held that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994). See also Baker, 443 U.S. at 140; Graham v. Connor, 490 U.S. 386, 394 (1989).

## 2. First Amendment

In Count I, Plaintiff contends that he was denied access to the courts in violation of the First Amendment and the Pennsylvania constitution.[3] In Count IV, he alleges retaliation for asserting his First Amendment rights. The United States Court of Appeals for the Third Circuit has indicated that, "[u]nder the First and Fourteenth Amendments, prisoners retain a right of access to the courts." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (citing Lewis v. Casey, 518 U.S. 343, 346 (1996)).[4] In addition, a prisoner may allege a retaliation claim based on the First Amendment. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). Thus, the First Amendment is implicated in this case.

The Court of Appeals has explained that:

> prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement. [Casey, 518 U.S.] at 354-55, 116 S.Ct. 2174. Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury"-that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. See Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy." See id. at 416-17, 122 S.Ct. 2179.

Monroe, 536 F.3d at 205-06 (footnote omitted).

Defendants indicate that Plaintiff is litigating his petition under the PCRA, 42 Pa. C.S. §§ 9541-46, in the Court of Common Pleas of Northumberland County and that he filed a habeas

---

[3] He also cites the First Amendment in connection with the due process claims in Count III and the conspiracy claims in Count V. Neither claim has any basis in the First Amendment.

[4] The Supreme Court has noted that its decisions have grounded the right of access to courts in various provisions of the Constitution, including the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause and the Fourteenth Amendment Equal Protection and Due Process Clauses. Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002).

corpus petition in the United States District Court for the Middle District of Pennsylvania. (ECF No. 52 Exs. A, B.) They contend that there has been no "barrier" keeping him from accessing the courts in a "forward-looking case." In addition, under a "backward-looking" analysis, Defendants note that in the PCRA case, counsel has been appointed and an amended petition has not yet been filed.

The federal habeas case was "dismissed without prejudice to his right to seek timely habeas relief once he has exhausted his state court remedies." (ECF No. 52 Ex. B, Docket No. 29; see Sherwood v. Beard, 2011 WL 6888653 (M.D. Pa. Dec. 30, 2011.) This is a common procedure, which in no way precludes him from prosecuting his case once he has exhausted his state court remedies.

Plaintiff argues that he can state a "forward-looking" claim because he has been denied his right to represent himself in the PCRA proceeding and "was diverted and forced to turn to full-counseled representation due to Defendants' destruction of his legal property." (Pl.'s Br. Opp'n Mot. Dismiss at 5;[5] Sherwood Aff. ¶ 5.) This argument is nonsensical and need not be addressed further.

Nevertheless, Plaintiff also asserts that "Lewis does not suggest that the plaintiff must prove a case within a case to show that the claim hindered or impeded by the defendant necessarily would have prevailed." Simkins v. Bruce, 406 F.3d 1239, 1244 (10th Cir. 2005). The court in Simkins went on to observe that, in Lewis, the Supreme Court "explained that cognizable harm arises not only when a claim is lost or rejected on account of the defendant's conduct, but also when the plaintiff's efforts to pursue a claim are impeded." Id. (citing Lewis, 518 U.S. at 351, 353 & n.4). As a backward-looking case seeks redress for "specific litigation

---

[5] ECF No. 58.

that ended poorly," Christopher, 536 U.S. at 414, it would be premature for this Court to determine whether such a claim could be sustained. See Lyons v. Secretary, Dep't of Corrections, 445 Fed. Appx. 461 (3d Cir. Sep. 27, 2011) (affirming summary judgment in favor of prison officials because review of state-court proceedings demonstrated that prisoner capably raised his Brady claim in PCRA petition, but lost on the merits, thus, confiscation of his legal materials did not prevent him from raising the claim).

Plaintiff also cites a case that bears some resemblance to this one, Lueck v. Wathen, 262 F. Supp. 2d 690 (N.D. Tex. 2003). In Lueck, the plaintiff complained that prison officials had confiscated the affidavit of a key witness, Tim Brisco. The court explained that:

> Plaintiff alleges that Brisco would have supported his self-defense theory and contradicted the testimony of his ex-wife by testifying that plaintiff did not bring a gun into the club on the night of the shooting. Despite the importance of this testimony, Brisco was not interviewed by defense counsel. Plaintiff and his legal advisor, Pierre Smith, were in the process of preparing a state writ challenging his murder conviction on grounds of ineffective assistance of counsel when his legal papers were confiscated by defendants. Without this affidavit, plaintiff cannot establish the materiality of the missing testimony which is necessary to prove his ineffective assistance of counsel claim. See Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994) (court cannot begin to analyze claim of ineffective assistance of counsel without affirmative showing of missing evidence or testimony). Moreover, plaintiff is unable to contact Brisco to obtain another affidavit. This evidence, viewed in the light most favorable to plaintiff, is sufficient to demonstrate "actual injury."

Id. at 695 (footnote omitted).

Similarly, Plaintiff alleges that Defendants lost or destroyed his grandfather's affidavit, which would have supported his claim of ineffectiveness of trial counsel for failing to call the grandfather, whose testimony might have presented mitigating circumstances that would have saved Plaintiff from receiving a death sentence.[6] As the claim of counsel ineffectiveness is

---

[6] Plaintiff argues that his grandfather's affidavit would also have been relevant to the guilt phase of his trial because it would have supported his diminished capacity/voluntary intoxication

13

currently pending before the PCRA court, this Court should not presume to analyze the issue of

whether the loss of the affidavit has impeded his ability to litigate it.  In addition, Plaintiff has

alleged that the loss or destruction of his box of materials has deprived him of letters he sent to

trial counsel, instructing him to stop requesting continuances, and thus he is impeded in his

attempt to show that trial counsel denied him a speedy trial.[7]  With respect to the denial of access

to court claims in Count I, the Court should deny the Motion to Dismiss and stay this action

pending resolution of Plaintiff's PCRA petition.

In Count II, Plaintiff alleges that Defendants were "deliberately indifferent" to his access

to court claim and that the loss of his legal materials caused him acute mental, emotional and

physical pain in violation of the Eighth Amendment.  These allegations merely repeat the claim

in Count I, and the Eighth Amendment is not applicable to denial of access claims.  Therefore,

with respect to Count II, the Motion to Dismiss should be granted.

Defendants argue that, with respect to the retaliation claim in Count IV, courts have held

that:

> a prisoner claiming that prison officials have retaliated against him for exercising
> his constitutional rights must first prove the following three elements: (1) the
> conduct in which he engaged was constitutionally protected; (2) he suffered
> adverse action at the hands of prison officials; and (3) his constitutionally
> protected conduct was a substantial motivating factor in the defendants' conduct.
> Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). With respect to the
> obligation to demonstrate that he suffered an adverse action, a plaintiff must
> demonstrate that he suffered action that "was sufficient to deter a person of
> ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220,
> 225 (3d Cir. 2000). Examples of adverse actions that have, in certain cases, been

---

defense (ECF No. 58 at 7-8), but nothing he describes in the affidavit would have challenged the
facts of the case.

[7] Plaintiff notes that Pennsylvania has an "affidavit rule" that requires a petitioner raising a claim
of counsel ineffectiveness for failure to call a witness to submit an affidavit stating that the
witness was "available and willing" to testify.  Leyva v. Williams, 504 F.3d 357, 366 (3d Cir.
2007) (citation omitted).  Nevertheless, the courts of Pennsylvania must decide whether his
proposed claim fails for this reason.

> found to support a retaliation claim include filing false misconduct reports,
> <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to
> another prison, <u>Rauser v. Horn</u>, 241 F.3d 330, 333–34 (3d Cir. 2001), and placing
> a prisoner in administrative custody, <u>Allah</u>, 229 F.3d at 225.

<u>Ransome v. Mooney</u>, 2010 WL 4683779, at *5 (M.D. Pa. Oct. 1, 2010). The court went on to observe that, although prisoners frequently attempt to base causation on temporal proximity between their protected activity and the adverse action, these efforts are generally rejected as insufficient. <u>Id.</u> at *7-8. "Once a prisoner has made his prima facie case, the burden shifts to the defendant to prove by a preponderance of the evidence that it 'would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.'" <u>Carter</u>, 292 F.3d at 158 (quoting <u>Rauser</u>, 241 F.3d at 334).

However, this shifting-burden framework is not the appropriate standard to apply when a motion to dismiss has been filed. Defendants cite a series of district court cases (<u>Ransome</u>; <u>Aruanno v. Caldwell</u>, 2011 WL 2293385, at *4 (D.N.J. June 8, 2011); and <u>Krahn v. Delaware</u>, 2010 WL 2573906, at *3 (D. Del. June 25, 2010)) that dismissed prisoner claims at an early stage of the litigation, but authoritative cases from the Court of Appeals (including <u>Carter</u> and <u>Rauser</u>) were all decided in the context of motions for summary judgment; in <u>Allah</u>, the Court of Appeals reversed the district court's order granting a motion to dismiss. By contrast, the Supreme Court has held that a plaintiff alleging a claim of employment discrimination need not plead "specific facts" establishing the elements of a prima facie case, as would be required in response to a motion for summary judgment or at trial. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510 (2002) (establishing a prima facie case is an "evidentiary standard, not a pleading requirement."). In <u>Twombly</u>, the Court cited <u>Swierkiewicz</u> without distinguishing it and rejected the plaintiffs' contention that it "ran counter" to <u>Twombly</u>'s plausibility standard. 550 U.S. at 569-70.

Plaintiff's complaint alleges all that is necessary for his claim of retaliation at this stage of the proceedings. Therefore, with respect to Count IV, the Motion to Dismiss should be denied.

### 3. Fourth Amendment

In Count VII, Plaintiff claims that his Fourth Amendment right to be free from unlawful seizures was violated when his legal materials were seized. However, the Supreme Court has held that "the Fourth Amendment has no applicability to a prison cell." Hudson v. Palmer, 468 U.S. 517, 536 (1984). "Prisoners do not have a right to privacy and freedom from unreasonable searches during incarceration." Tindell v. Beard, 2009 WL 3739448, at *2 (3d Cir. Nov. 10, 2009). Thus, the Fourth Amendment is not applicable to this case. Therefore, with respect to Count VII, the Motion to Dismiss should be granted.

### 4. Eighth Amendment

Plaintiff cites the Eighth Amendment in almost every count of his Amended Complaint. However, the Eighth Amendment provides that "cruel and unusual punishment [shall not be] inflicted." U.S. Const. Amend. 8. It has no connection to the allegations of this case. His allegations arise under explicit sources of constitutional protection, such as the First and Fourteenth Amendments, and thus he cannot rely upon the Eighth Amendment. Albright v. Oliver, 510 U.S. 266 (1994). As such, the Eighth Amendment claims should be dismissed.

### 5. Fourteenth Amendment

In Count III, Plaintiff contends that he was denied due process both before and after his property was lost. The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. 14. Thus, it is implicated in this case.

However, the United States Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson, 468 U.S. at 533. Moreover, pre-deprivation notice is not constitutionally required. Id. The United States Court of Appeals for the Third Circuit has held that "the prison's grievance program and internal review provide an adequate post-deprivation remedy to satisfy due process." Tindell, 2009 WL 3739448, at *2 (citing Tillman v. Lebanon County Correctional Facility, 221 F.3d 401, 422 (3d Cir. 2000)). Not only was such a remedy available in the form of the grievance system, but Plaintiff used it extensively. Therefore, he cannot maintain a procedural due process claim regarding the loss of his legal materials and with respect to Count III, the Motion to Dismiss should be granted.

Plaintiff also argues that his right to substantive due process was violated. However, the Supreme Court has held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (quoting Albright, 510 U.S. at 273). Because the First and Fourteenth Amendments provide an explicit source of constitutional protection for Plaintiff's claims, he cannot maintain a substantive due process claim as well. Accordingly, such claims should be dismissed.

### 6. Conspiracy Claims

In Count V, Plaintiff alleges that Defendants conspired to violate his rights. Defendants argue that the Court of Appeals has held such allegations are "vague and conclusory" and do not present a cognizable claim under § 1983. Williams v. Bitner, 307 Fed. Appx. 609, 611 (3d Cir.

Jan. 21, 2009). Plaintiff responds that he has sufficiently pleaded conspiracy by alleging that "Walker and Shrader concerted to divert him" from getting his box back; that Wendell conspired with Shrader by failing to intervene to stop him; that Vidonish conspired with Shrader to intimidate him by giving improper instructions and failing to intervene; that Kennedy conspired by failing to overrule a grievance denial; that Bupka conspired by failing to allow him to use options to avoid the destruction; that Folino conspired when he denied Plaintiff's appeal; that Smith acted "with a common design and understanding" and a "unity of purpose" when he approached Plaintiff to place him in a disadvantageous position; and that Vidonish, Kennedy and Orndoff conspired to destroy his property. (ECF No. 58 at 21-22.) These allegations are insufficient. Therefore, with respect to Count V, the Motion to Dismiss should be granted.

### 7. Failure to Train

In Count VI, Plaintiff alleges that Defendants Beard, Folino, Davis, Walker, Haywood, Shrader, Kennedy and Bupka are liable for failing to train their subordinates. Many of his allegations relate to how these Defendants responded to his grievances or failed to do so. Defendants argue that the Court of Appeals has held that a defendant in a civil rights suit must be personally involved in the alleged wrongs and that review of grievances is insufficient. Mack v. Curran, 457 Fed. Appx. 141, 144 (3d Cir. Jan. 11, 2012).

Plaintiff responds that he has alleged personal involvement beyond reviewing his grievances: Bupka, Kennedy, and Walker refused to allow him to mail home a box of materials to make room for his extra box of legal materials; Davis assigned Shrader to be the grievance officer on this matter despite the fact that the grievance involved Shrader; Beard and Folino failed to intervene to stop the illegitimate destruction of his property and to correct the problem once they were made aware of it. (Am. Compl. ¶¶ 28, 57-65, 67-68; Sherwood Aff. ¶¶ 12-13,

18

15-16.)  Plaintiff has alleged sufficient involvement to proceed with his claims at this stage of the proceedings.  Therefore, with respect to Count VI, the Motion to Dismiss should be denied.

### 8.  Eleventh Amendment Immunity

The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  The Supreme Court has stated that the presupposition confirmed by the Eleventh Amendment is that "federal jurisdiction over suits against unconsenting states was not contemplated by the Constitution when establishing the judicial power of the United States." Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) (internal citation omitted).  The immunity applies not only to the state itself, but also to state agents and state instrumentalities. Thus, courts must examine the essential nature and effect of the proceeding, the nature of the entity created by state law or the issue of whether a money judgment against the instrumentality would be enforceable against the state to determine whether the instrumentality should be treated "as an arm of the state." Regents of the University of Calif. v. Doe, 519 U.S. 425, 429-30 (1997).

The DOC is a state agency which is immune from suit pursuant to the Eleventh Amendment.  Lavia v. Pennsylvania Dep't of Corrections, 224 F.3d 190, 195 (3d Cir. 2000). Defendants, in their official capacities, are state agents who would be entitled to Eleventh Amendment immunity.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  See also Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 & n.10 (1989) (except when sued for injunctive relief, state officials in their official capacities are not "persons" for purposes of § 1983).  The immunity applies to both federal and state law claims.  Pennhurst State Sch. & Hosp. v.

Halderman, 465 U.S. 89 (1984).

The United States Court of Appeals for the Third Circuit has indicated that:

> Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law. The third exception ... is the doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.714 (1908).

Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted). Pennsylvania has not consented to waive its Eleventh Amendment immunity to being sued in federal court. 42 Pa. C.S. § 8521(b); Chittister v. Department of Cmty. & Econ. Dev., 226 F.3d 223, 227 (3d Cir. 2000). In addition, the Supreme Courts has held that § 1983 does not abrogate states' sovereign immunity. Quern v. Jordan, 440 U.S. 332, 339-46 (1979).

With respect to the third exception, the Court of Appeals has explained that:

> The theory behind Young is that a suit to halt the enforcement of a state law in conflict with the federal constitution is an action against the individual officer charged with that enforcement and ceases to be an action against the state to which sovereign immunity extends; the officer is stripped of his official or representative character and becomes subject to the consequences of his individual conduct. The relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages.

MCI Telecommunication Corp. v. Bell Atlantic-Pa., 271 F.3d 491, 506 (3d Cir. 2001) (citations omitted).

"In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Public Service Comm'n of Md., 535 U.S. 635, 645 (2002) (citation omitted). Plaintiff alleges that Defendants may still have his box of legal materials, thus, he has alleged an ongoing violation of federal law and seeks relief that may be described as

prospective. Therefore, although he may not pursue damages claims against the Defendants, he may pursue injunctive relief if appropriate.

### 9. Pennsylvania Constitutional Claims

Plaintiff cites the "corresponding provisions of the Pennsylvania constitution." These would appear to be Article I, § 7 (freedom of speech), § 8 (freedom from unreasonable seizures), and §§ 1 and 9 (due process). The issue of whether a private cause of action exists to vindicate rights articulated in Article I of the Pennsylvania Constitution has not been resolved by the Pennsylvania Supreme Court. In Jones v. City of Philadelphia, 890 A.2d 1188, 1215-16 (Pa. Commw.) (en banc), appeal denied, 909 A.2d 1291 (Pa. 2006), the Commonwealth Court held that Pennsylvania law would not authorize a cause of action for *monetary damages* for the City's alleged violation of Article I, § 8 of the Pennsylvania Constitution, which prohibits unlawful searches and seizures, in an excessive force case. See also Douris v. Schweiker, 229 F. Supp. 2d 391, 405 (E.D. Pa. 2002) (citing to various district court cases that have observed the lack to state law with respect to this issue).

Plaintiff seeks monetary damages: nominal damages and compensatory damages in the amount of $350,000 and punitive damages in the amount of $350,000 against each Defendant, both jointly and severally, including all costs of litigation, attorney fees, delay damages and interest. (Am. Compl. at 39.) Under Pennsylvania law, he cannot pursue these claims for monetary damages arising out of alleged violations of the Pennsylvania constitution. However, he also asks in the alternative for injunctive relief, specifically the return of his legal materials if they still exist. (Am. Compl. ¶ 82; ECF No. 58 at 24.) Therefore, as with the federal constitutional claims, with respect to all of the Pennsylvania constitutional claims alleged, the Motion to Dismiss should be granted with respect to Counts II, III, V and VII and denied with

respect to Counts I, IV and VI.

## III.  CONCLUSION

For these reasons, it is recommended that the Motion to Dismiss the Amended Complaint filed on behalf of the Defendants (ECF No. 52) be granted with respect to Counts II, III, V and VII and denied with respect to Counts I, IV and VI.  It is further recommended that this case be stayed pending resolution of Plaintiff's post-conviction collateral petition.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to timely file objections will waive the right to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,


/s/ Maureen P. Kelly
MAUREEN P. KELLY
United States Magistrate Judge

Dated: July 27, 2012


cc:     Brentt Sherwood
        GD-7549
        SCI Greene
        175 Progress Drive
        Waynesburg, PA 15370

        All counsel of record via CM/ECF